Good morning. May it please the Court, I am Shafour Matloub, representing Petitioner Juan Carlos Vera. I would like to reserve some time for rebuttal. BIA in this case made two major errors. First, it found that Mr. Vera's persecution was not on account of a protected ground. And second, its decision by one judge was inconsistent with a prior decision of the BIA by three judges, reversing the same immigration judge on all grounds and granting Mr. Vera's brother Pablo asylum. In this case, Mr. Vera has argued that his persecution was based on account of both actual and imputed political opinion, as well as membership in two particular social groups. First, family member of a victim of violent crime who persisted in seeking action on the part of police as perpetrators of the crime against his brother. You know, any time a definition takes like 20 seconds to state, it doesn't sound like a real coherent group. Do you have any authority that would support a definition such as the one you just offered? Well, Your Honor, first I was quoting the immigration judge. That's how the immigration judge. That's the claim. All I understand is the claim. What I want to know is is there any authority that supports the proposition that that can be a social group for these purposes? And what we are relying on is the Lynn case, where it said, if I may quote, how it decided that a family can be a social group. Well, family you can say in about two seconds. You didn't give us family. Not just the family. And that's why I'm focusing on the Lynn's case. In the Lynn's case, it was decided that where a family membership is sufficiently strong and discernible bond, that it becomes the foreseeable basis for persecution. But you don't claim, you don't claim that your client was persecuted because he was related to his brother. There are lots of other members of the family there's no discussion of. You add a lot to that. It makes the social group sound like this person, whatever reason this person was persecuted, that constitutes the social group. Your Honor, I would like to refer to it as and how I read Lynn as it's family plus. The family member has to show that the relationship is so strong and discernible bond that they have with family member that that family member is distinguishable from other family members. So if I go back to my question, do you have any authority that supports the definition of a social group that looks like a jigsaw puzzle piece that's carved out to match your particular client? Again, with all due respect, Your Honor, I'm relying on the definition that Lynn has provided. Well, you just gave me the definition of Lynn as being family. But this is a whole lot more than family. And I'm arguing that definition of Lynn is not just family. In Lynn it was, if I may point to the facts of Lynn, Lynn decided that that specific child of the family whose parents had violated the one-child policy because that child himself had also was persecuted because of his parents' violation. And Lynn says Lynn also presented other new evidence of persecution of his family himself and other children of multi-child families. The emphasis there was on family. Not a whole lot more than that. But if a child of the same family lived in another part of China and that child did not have that strong and discernible bond with the parents, then that child would not be counted other than Lynn. Counsel, is this the issue that the government has conceded should be returned to the BIA? Yes, Your Honor. They have conceded. It sounds a lot like the one they conceded, send it back to the BIA and let them decide it. True? Is that true? That is true, Your Honor. All right. Thank you. And I realize that the courts may be inclined to remand on that issue. But if that is the case, I mean, the reason was they only asked that the case be remanded on this one issue in their motion to remand. And that's why we opposed the motion to remand. Because we would like the case, since we had already done the briefing on all the issues, if the court is inclined to remand the case, Mr. Vera would like to ask that it be remanded on all issues, which are on all the four protected grounds, and that any, with an instruction to the BIA, that any future decision in this case must be consistent with the prior decision by three-judge panel in his brother's case. Counsel, come on. The brother had a somewhat different situation, does he not? Slightly different situation? He's the one who was attacked. He's the one who was a homosexual, et cetera, et cetera, et cetera. Isn't it a little different from this guy? Would you say minuscule, maybe? Yes, Your Honor. Each case is different. Well, then, if each case is different, then why is it that the BIA is required to shove him into the same exact category, no matter what? No matter what it finds on anything else. Well, the brother got it, so he gets it. What case says that? First, Your Honor, I wasn't arguing that that's what the BIA needs to do. That is what you said. You said tell the BIA it must give him the same. That's what you said. Your Honor, I said the decision must be consistent. It must be consistent, yes. So if it's consistent, all I have to say is, I'm sorry, this is not the same person as the brother. He's not even similar. Okay. Two points, Your Honor. First, the BIA, even though Pablo's decision was before them, they did not even discuss in their decision, it's not even mentioned. And second of all, in Pablo's decision, the Court mentions Mr. Vera and how Mr. Vera was harmed in the same manner as Pablo was. And the BIA in Pablo's case does not only find him. In the same manner does not mean for the same reason, does it? Agreed, Your Honor. And the second point on that is that the BIA in Pablo's case doesn't only find that his persecution was based on his homosexuality, but it says based on his homosexuality and his insistence in seeking justice from the police because he was raped. On both accounts. I want to talk to, just focus on this individual. Aside from the problems that my colleagues brought up, how would you distinguish this case from Prasad? Are you familiar with that case? Prasad had to do with the problem on Fiji, native Fijians versus people of Indian extraction. And in Prasad, the person was brought in, roughed up, kept in police contact, and then went home. Actually, as you read Prasad, you get the feeling the same thing that was done to Prasad was done to the petitioner that we have in this case. And we held there that that was not persecution. There can be this roughing up. It's wrong, and we don't care for it. But that's different from saying there's persecution. And I couldn't see a fundamental difference between your case and Prasad. Well, first, Your Honor, I would mention that in this case, in addition to the kidnapping and beating up, there was also specific death threats made against Mr. Vera. And second, I would argue that that was not an issue that the BIA dealt with. The BIA decision seemed, how I read it, is that they only made the decision on an account of basis and did not get to the issue of past persecution or not. And even though, just for the sake of argument, we still argued it in our opening brief, the government did not argue that issue either. The government has not argued that he was not persecuted. So the only issue in this case before the Court is the unaccounted issue. Well, in Prasad, they didn't seem to get to it either. That's why it seems to be fairly close. Are you familiar with the case I'm talking about? Somewhat, Your Honor, yes. Okay. Then you know what the problem is. He was hit in his stomach, kicked from behind. His captors questioned Prasad regarding the support of the Indian-led labor movement, et cetera. And after four to six hours, he was released. We held that in that case, there just was no persecution. Now, I'm not saying that this was a nice thing that was done. Don't get me wrong. Police should never act the way they acted in this case. But there's a difference between an inappropriate action by police and persecution. And the persecution is the thing we're looking at. It seems to me Prasad leads me in a different direction from yours. And I just wanted to give you a chance to respond. Yes, Your Honor. Again, we've relied on Borsodano that death threats, this case, because of the death threat, it goes further than that. There was a specific death threat made against Mr. Vera. He was told that this time we will let you go, but next time we will be different. So there was a specific death threat in this case. And I'm seeing that, if I may say. And we took your time with questions. We'll give you one minute for a rebuttal. Thank you, Your Honor. We'll hear from the government. Good morning, Your Honors. Happy St. Patrick's Day to you, too. My name is Bo Stanton. You didn't give that greeting to a Scotchman, did you? I haven't bumped into a Scotchman yet today, so I wouldn't do it anyway. He's not wearing green, though. He's trying to cover his bases. Well, my name is Bo Stanton. I'm here for Respondents, of course. I was wondering why the board is making it so difficult on us by just saying we're not going to get to the credibility issue and going on. I mean, the Canadian process where he said he wanted to stay back for an entirely different reason, witness to shooting, is just fundamentally different from what he's saying under oath now. And I don't understand, and maybe there's something I've missed in the case, why the board just didn't go ahead with the credibility issue and be finished with it. Well, you're correct, Your Honor. Maybe it would have made this case a little simpler if the board just would have stuck with the credibility determination, because you are right. They are presenting one claim in Canada and then presenting an entirely different claim here in the United States. Under oath. Under oath. But I guess the board wanted to go ahead. We would have an issue that would be much easier than the one we have before us. The board gave no reason why it said it didn't admit credibility. It just said that we're not getting to that issue. Correct, Your Honor. And I have no explanation. So if we find against the board now, we have to respond. We have to refer it back for them to get to the issue. It seemed to me pretty circular. Well, Your Honor, I don't think you would have to find against the board in this case, because the evidence substantially supports their decision that the Petitioner's claim that he was harmed briefly one time by the police on account of complaining to the police is not protected under the Immigration and Nationality Act. I thought you didn't cite Prasad. It seemed to me to be right on point. Your Honor, I'm sorry. I overlooked that case. I thought Melina Morales was more on point than Prasad because of Melina Morales. We had a very similar fact situation. I'm not sure if you're familiar with that case. But there was, I believe it was a family member there, too. I think it was a cousin or nephew. I'm sorry I'm not completely firm on that fact. But, yes, it was a nephew who had found out that his aunt was raped by the mayor of that town. And he went to the police and complained about it, and then he was beat up by individuals that were presumably associated with the mayor and said, leave this alone. And there the court did not find that he had been persecuted on account of a protected ground. I think those facts are substantially similar to the facts in this case. I think that's probably right. In this case, what the policemen said, they didn't indicate why they were beating him up, as I read the record. They were saying things like, you're causing problems, and if you do it again, we'll get you, and et cetera. How did the board treat that? I mean, you could treat it two ways. If you read beyond, as counsel would do, it was because of his brothers being a homosexual and he's protecting the right of homosexuals. You could read it another way where the police just didn't like people making a lot of reporting to their executives, and they're beating him up for that reason. How did the board treat that? Well, respectfully, Your Honor, I think there's only one way that you could read the facts in this case, and that's the way the board read the facts in this case, is that he was simply beat up because he was complaining to the police to protect his brother. There is no evidence in the record that shows that the police were attacking him because he was standing up for the rights of homosexuals or for the fact that he was part of a particular social group. He was simply attacked because he wouldn't stop going to the police and saying, you need to do something about my brother's case. If you look at the record, there are four incidences involving the petitioner and the police. The first incident was the first time they went to the police station, and nothing happened. The police laughed amongst themselves and said, give us a call. We'll try to do something later. During the second incident, they went back again, and the police said, oh, you guys again. And they said, you need to do something. You know, petitioner said, you need to do something about my case. They said, we don't like to be pressured. You can find these statements on 189 in the record. And they also said, we don't like to be told what to do. That's at 437 in the record. And then one other police officer came up and said, it would be better to forget all about it. That's at 436 in the record. That is what happened during the second incident. There was no imputation of homosexuality or membership in a particular social group. They simply say, drop it. Leave it alone. Well, if you look at the third incident, he goes back to the police station, because from the time between the second time they were at the police station, the third time they went back, Pablo was attacked, allegedly by plainclothes police officers. So Vera's upset. He goes back to the police officer, and he accuses him, this is at 191 in the record, of attacking his brother. And they don't say they get it. They do everything else. They say, we didn't do it, right? And he says, I want to talk to your superiors. They wouldn't let him talk to their superiors. And he's like, I would go to the media. All these quotes from the petitioner himself is on 191 in the record. Okay, police officers are like, all right, go ahead. And you'll have to face what's coming next. That's all because the petitioner is complaining about, do something about my brother's case. There is nothing in that record that shows that during that incident, it was on account of his political opinion, membership in a particular social group, or any protected ground under the Immigration and Nationality Act. Well, let's go ahead and turn to the fourth incident, which is where petitioner was harmed by these police officers. He's going to visit his brother. That's a town 1,000 miles away. He gets to a checkpoint. They stop him. They say, are you Pablo's brother? Yes, yes, I'm Pablo's brother. Come with us. So they take him in a police car, drive him out to the field, and they rough him up in the car, make sure his head's down, hit him a couple times with a baton. I'm not trying to minimize the harm that was here, but this is what happened. And so he says, they call him names. They call him very derogatory names that are usually, you know, they call him fag and fucking fag. And, you know, it's very derogatory. But if you look at Pablo's testimony, when he goes and talks about what the police said to him, he says that the police asked his brother, how could you be helping your sissy brother? That indicates they were not saying that Mr. Vera was a homosexual, but rather they acknowledged that his brother was a homosexual. How could you be helping him? They were astonished by this, right? But they say, this is the quote I think is most important here, you're always stirring up trouble. This is what they tell him. You're always stirring up trouble, and next time you do this, you're going to be dead. And they say, you can't play around with the police. You can find this at 439 and 438 in the record. When you consider all these facts taken together, I think the picture becomes pretty clear that the petitioner, and as the board found, the petitioner was merely attacked because he was trying to seek redress for his brother's rape and subsequent attacks by presumably plainclothes police officers. What are the issues you can see we send back? We tried to move to remand this case to have the board more fully articulate why the particular social group that they proposed. I thought you read in your brief that you conceded that it should go back to the board on that issue. Am I wrong? We suggested that it should go back to the board because of this issue. But I think you could still uphold the board's decision. Whoa, whoa, whoa, whoa, whoa. You seem to be arguing the contrary now. Am I correct? No, I'm arguing the alternative, Your Honor. I'm arguing that, yes, you could remand this case back to the board. You can or you concede that we ought to? I think you can. Well, of course, we can do all kinds of things. You are the court, yes. But I'm trying to understand what you're saying. Sure. We can concede, yes. You can do what you want, judges. I understand. I understand that. But what you really said was that we concede that issue ought to be decided by the board. Wasn't that not true? Yes, they can. I would say, Your Honor, one, that you can remand it. We concede that you can remand this case back on this particular issue to the board. That's what we moved for you to do on two different occasions, one that threw a motion, and now we renewed it on our brief. Yes, we concede that you can remand back on this issue. But if you decide not to, the board's decision still holds up, because they said that he wasn't particularly on account of any protected ground. So implicitly, you could argue that the board addressed a particular social group issue by saying, hey, the only reason why the petitioner was attacked in this case was because he was complaining to the police officers. That was the only reason, that's the only evidence to record that supports this conclusion. So if you decide not to remand it, the board's decision still holds up. I don't understand that statement. If we decide not to remand it, we would be correct, you're saying? If you were to uphold the board's decision. Yes. If we decide not to remand. No, I'm saying you. I know I'm arguing on the fence right here. I'm just saying, if we decide not to remand, then we're correct. Is that right? No, no, no. I'm saying if you decide not to remand and you find for the board, you find that the board was correct in deciding that the petitioner was only attacked for one reason and one reason only. Yes. For helping his brother. Yes. Then we would agree that that's the correct thing to do. Yeah. In other words, you concede remand, but you agree that if we don't, you're not going to appeal it. Is that what you're saying? If we don't lose, of course. But let's go ahead. I think it's pretty clear that when you go through the record in this case, that the petitioner was only attacked for one reason and one reason only. He was trying to help his brother out. But we go ahead and turn to the other two issues that the petitioner brings up. One, he says you have to decide this case as they decide a Pablos case. I think the panel is pretty familiar with this case already and understands that this case is nothing like Pablo's case. Pablo was a homosexual. He was raped by four guys because he was homosexual. He was beat up by the police officers. The facts of this case are completely different than the facts of Pablo's case. And just because the board granted asylum to Pablo does not mean asylum should be granted to the petitioner in this case. I see my time has expired. I will go ahead and say good morning and thank you for letting me be up here. Thank you. Mr. Aru. Thank you. Two points. First, in reply to Judge Fernandez's question, the government has consistently conceded that BIA did not decide the case on either the social group, a family member, or the actual political opinion. And there is no indication in the BIA decision. The government until today, even in their brief, did not make any arguments against those two protected grounds. So the court definitely is the best or worst position that it has to remand on those two issues. And then I would like to, again, in reply to Judge Fernandez's question on the inconsistent decisions, I'd like to point out the Juguna case that the government actually pointed out in their brief, that this court finds it extremely disturbing where the BIA had found inconsistent decisions where the person who was denied asylum, he was the person who had helped the other two domestic workers to escape. So in that case, if you look at the Juguna case, the cases were much more different and the court still found that it was inconsistent when they were based on the same universal effects. This case is much closer than it was in the Juguna. We've used more than your minute. We thank you for the argument. The case just argued is submitted.
judges: Wallace, Fernandez, Clifton